LEO I. KENNEDY, WILLIAM T. HAINES, CLYDE A. RIEGEL, JOHN T. REDMON, CLYDE L. HAWKINS, JAMES F. OWEN, FRANK B. COLLIER, PEARL D. BALLINGER, A. W. WITKOP, CHARLES B. O'FLANAGAN, WILLIAM H. KANE, WILLIAM C. WEAVER, SR., DANIEL REDMON and CHARLES H. MILLS,

Defendants Below, Appellants,

*vs.*

WILLIAM D. ROBERTS and DAVID M. ARMOUR, members of The United Brotherhood of Maintenance of Way Employes and Railway Shop Laborers, in behalf of themselves and also in behalf of such other members of said Brotherhood as may desire to join as complainants herein, and MAX FICKERT and JOSEPH GREEK, Intervenors,

Complainants Below, Appellees.

*Supreme Court, on Appeal, Oct. 29, 1926.*

PENNEWILL, C. J., and RICE, HARRINGTON, RICHARDS and RODNEY, J. J., sitting.

*J. Frank Ball* and *Robert G. Harman,* for appellants.

*David J. Reinhardt,* for appellees.

PENNEWILL, C. J., delivering the opinion of the Court.

The fourteen assignments of error filed in this case will be considered by the court, as they were in the argument, and as covered by the following propositions, viz.:

1.  That the United Brotherhood of Maintenance of Way Employees and Railway Shop Laborers had no legal right to institute or maintain the suit in question in the form of a class-bill or otherwise. The only parties who could have brought said suit was the Pennsylvania System Division by its Trustees or other qualified persons, on a class-bill by one or more persons brought on behalf of the said Pennsylvania System Division and those connected therewith, and for its sole and exclusive benefit.

2.  Assuming that said suit was properly brought, it should have been dismissed because the same abated long before the termination of said suit.

The following allegations of the bill of complaint are not denied by the appellants, defendants below, viz.: That the United Brotherhood of Maintenance of Way Employees and Railway Shop Laborers is a voluntary unincorporated association of railway employees having a very large membership of persons residing in many different parts of this country and Canada; that it is an organization composed of a Grand Lodge and numerous subordinate lodges; that some of the subordinate lodges are grouped together for certain purposes, one such group being the Pennsylvania System Division of United Brotherhood of Maintenance of Way Employees and Railway Shop Laborers; that said Grand Lodge and subordinate lodges are members of said Brotherhood; that the members of the subordinate lodges are also members of the Brotherhood, and that said Pennsylvania System Division is also a part of said Brotherhood.

The following allegations of the bill were fully supported by the evidence, and for the most part not denied by the answer, viz.:

That on November 7 and 8, 1921, the defendant, Kennedy, was the Chairman, and the defendant, Haines, the Secretary-Treasurer of a protective department of the Pennsylvania System

Division, and that they, as well as other defendants, were agents and servants of said protective department and Brotherhood, and were then acting under such employment or agency; that a considerable amount of money belonging to said Pennsylvania System Division was, at the time of filing the bill of complainant, in the possession of said defendants, or some of them, whose duty it was to use said funds in accordance with the constitution of the Brotherhood, and for promoting its interests and not otherwise; that said defendants on or before November 7, 1921, attempted to take from the said Pennsylvania System Division and said Brotherhood a large number of members and form a new organization in place of said Pennsylvania System Division organization, and take from it its property, and moneys; that said defendants, particularly Kennedy and Haines, were using said moneys and property for purposes other than to promote the interests of said Pennsylvania System Division and Brotherhood.

Only two of the defendants, Kennedy and Haines, filed an answer in the cause, and in the argument before this court, as in the argument before the Chancellor, all claims of the defendants to moneys and property in their possession were abandoned, it being admitted that said property and moneys belong to the Pennsylvania System Division of the Brotherhood, and that the defendants have no right to them.

It also appears that the defendants held a meeting on November 7 and 8, 1921, at which they organized a new association called the Pennsylvania System Fraternity, and that thereafter they ceased to be members of the Brotherhood and of the Pennsylvania System Division, but retained the funds and property belonging to the said Division.

It was shown by the evidence, and not denied, that the Brotherhood and the Pennsylvania System Division, after November 7 and 8, 1921, continued to function and carry on the business in accordance with the constitution and by-laws of said Brotherhood.

In the argument in this court the only reason urged by the defendants for retaining possession of the moneys and property which admittedly belonged to the Pennsylvania System Division, was, first, that the suit was not properly brought; and, second, that the suit, if properly brought, had thereafter abated because of alleged disqualifications of the two complainants, Roberts and Armour.

The court below held that the moneys and property in possession of the defendants were held by them for the benefit of that branch of the Brotherhood known as the Pennsylvania System Division, and that Armour, one of the complainants, was, at the time suit was brought and thereafter, a member in good standing of the Brotherhood, and, therefore, fully qualified to be a complainant in the cause.

The decree of the lower court ordered the defendants to deliver to the Pennsylvania System Division, a branch of the Brotherhood, all books and records relating to the business and affairs of said Pennsylvania System Division, and further ordered that the moneys and property in dispute be paid or delivered to the Pennsylvania System Division.

It will be observed that none of the assignments of error relied on by the appellants go to the merits of the case, that is, to the right to the possession of the moneys and property obtained and held by the defendants.

The defense made to the bill of complaint is, that the suit was improperly brought, and particularly, the incapacity of the complainants to enter the suit, or to maintain the suit after it was entered.

There were two complainants—William D. Roberts and David M. Armour—who filed in the court below what is known in the law as a class-bill, for the benefit of themselves and others.

It is not denied that, in an unincorporated association of the character of the one here involved, even one member may file a bill for the protection of the interests, and the redress of the grievances, of his brother members if he is in good standing at the time.

But the appellants contend, first, that such a suit could not be brought before a request was made to the Board of Directors or managing body of said association setting forth the alleged wrongs or injuries and requesting and demanding that a suit be brought by them against the wrongdoer.

No authority has been cited, and we think none can be found that supports such proposition, although any number can be found that would be applicable if the association was incorporated. Such were the cases cited by the appellees. The Chancellor's opinion on

this point is so clear and convincing that no attempt will be made to supplement it.

The appellants also argued, but apparently without much insistence or confidence, that even if such a suit as was entered could be brought without request or demand being first made, the only party who could bring the suit was the Pennsylvania System Division, the association entitled to the property, and moneys in question. It is not denied that said Division is a branch of the Brotherhood, and manifestly the acts of the defendants were injurious to both. The destruction of the Pennsylvania System Division, a part of the Brotherhood, would have been a serious injury to the latter, and any member thereof in good standing could institute a suit to prevent or redress the injury. The suit was brought primarily for the protection of the Brotherhood by two members thereof, but it was also for the protection of the Division, a constituent part of the Brotherhood. There was a common interest and a common injury.

It was held by the Chancellor that Armour, one of the complainants, was a member in good standing of the United Brotherhood of Maintenance of Way Employees and Railway Shop Laborers at the time the bill was filed and had ever since continued to be such member. Such being his conclusion, it was not deemed necessary to consider the relation of Roberts, the other complainant, to the Brotherhood. If the conclusion of the Chancellor was correct the suit was properly brought and maintained, because, as we have already said, one member in good standing could file a class-bill, and prosecute the suit to the end if he continued to be such member. This is not denied.

So that it will not be necessary for this court to consider whether Roberts was a member in good standing, during the time covered by the suit, unless we find that Armour was not. Was the decision of the Chancellor correct?

It may be said, and it is not disputed, that if Armour was a member of either local lodge No. 480 or No. 1793 (both being in the Pennsylvania System Division) at the time the bill was filed, and continued to be such until the termination of the suit, before the Chancellor, the suit was properly brought and maintained, because he was, during that time, a member of the Brotherhood, any member of whom in good standing could enter the suit.

Armour testified positively that he was, at the time the suit was brought and during its pendency, a member in good standing of one or the other of said local lodges. The burden was on the defendants to show that he was not. Have they done this?

The controversy on this point seems to center around the effect of a "paid-up card" from local lodge No. 480, showing the payment in advance of Armour's dues from January 1, 1921, to January 1, 1922. The card, which was admitted in evidence, shows —"dues paid in full to January 1, 1922." Armour was President of the lodge at the time the card was issued in pursuance of a provision in the Constitution and By-Laws of Mazuma Lodge No. 480, which reads as follows:

"The President shall have his Grand Lodge System Division and local dues paid annually in advance."

It is not denied that so long as the paidup card was effective the holder was a member of the Brotherhood in good standing. But because, in June, 1921, Armour was removed as President of the lodge, and the by-laws were amended whereby the dues of the President were not to be paid in advance, it is contended that he was not a member in good standing after his removal and the amendment of the by-laws.

It is not claimed by the appellees that Armour had actually paid any dues for the year beginning January, 1921, but it is claimed that his paid-up card was effective for the entire year for which it was issued, and that his removal from the office of President, and the amendment of the by-laws did not affect his status as a paid-up member for the year.

If such contention be sound, then Armour was a member of the Brotherhood in good standing at the time the suit was brought November 7, 1921, and competent to enter the suit.

The Chancellor sustained the position taken by the appellees on his point, and we think he was warranted in so doing. After the lodge had certified that Armour's dues were paid for the year, in accordance with its constitution and by-laws, it was not competent for any one, and particularly those who had ceased to be members, to say they were not paid. The court could not do otherwise than hold that he was a member in good standing when the suit was brought.

Did Armour continue to be a member of Lodge No. 480, or of Lodge No. 1793, after January 1, 1922? He swore that he did, and his testimony is not shown to be false. It is combatted only by inference or implication. It is argued that, because the date of his becoming a member of Lodge 1793 is not shown, it may be that there was a gap between his dropping out of one lodge and joining the other. And, further, it is claimed that after January 1, 1922, he ceased to be a railway workman or employee, and was, therefore, not then a member of any lodge or of the Pennsylvania System Division or Brotherhood. But it appears that he ceased to be a railway workman because he was appointed "organizer" for the Brotherhood, and it is not shown that he did not pay dues to the Brotherhood. At any rate, the Brotherhood made him one of its organizers and thereby recognized his relation. It also appears that organizers are required to devote so much of their time to their duties that they cannot continue to be railway workmen. It further appears, Section 11, Article 1, of the Constitution of the Brotherhood, that organizers are recognized as competent to serve as delegates representing local lodges in the Grand Lodge, and that an organizer shall not represent any lodge other than the one in which he holds membership. The fact, therefore, that Armour was an organizer, and as such competent to serve as a delegate to the Grand Lodge tends to corroborate his testimony that he was a member of some lodge in the Pennsylvania System Division after January 1, 1922.

And, furthermore, as the Chancellor very aptly said:

"If the Brotherhood and one of its lodges recognizes him as a member, I do not see how the defendants, who have withdrawn and are members of a rival organization, are in a position to try out the question of the propriety of their conduct in admitting him to membership."

We find no error in the proceedings of the lower court, and the decree of the Chancellor will be affirmed.